In the Matter of the Conservatorship of Christina JAHN, incompetent, ex rel. Harry JAHN et al., Appellants,

v.

Richard D. HARMES, Appellee.

No. 2–57529.

Supreme Court of Iowa.

Jan. 19, 1977.

Warren G. Dunkle, Sioux City, for appellants.

Smith & Smith, Sioux City, for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal relates to alleged indebtedness of conservators to their ward.

Christina A. Jahn (Mrs. Jahn) was 95 at the time of the hearing in question in probate court. She and her husband, now deceased, owned substantial property and gave land to each of their nine children. After her husband's death, Mrs. Jahn sold additional land and distributed most of the proceeds to the nine children. Mr. Warren G. Dunkle was Mrs. Jahn's long-time attorney.

One of the Jahn children is Amanda Harmes, wife of Richard D. Harmes. Over the years Mr. and Mrs. Harmes helped Mrs. Jahn in various matters and handled some of her business affairs. Mrs. Jahn reposed confidence in the Harmeses and relied upon them. Another of the relatives, however, Mrs. Harry Jahn, prepared Mrs. Jahn's income tax returns through 1968.

Another child of Mrs. Jahn is Edward A. Jahn. At some time more than 15 years ago, Edward bought corn from Mrs. Jahn and gave her a note for the price. He never paid the interest or principal, and the whereabouts of the note is unknown.

In about 1966 Mrs. Jahn lent Richard D. Harmes $3000. Thereafter Richard paid interest of $150 annually on the loan for three years. In about 1969 Richard substantially took over Mrs. Jahn's affairs including preparation of her tax returns. He ceased paying interest and now claims she made him an oral gift of the loan.

On April 23, 1970, within the period Richard was handling Mrs. Jahn's affairs, Mrs. Jahn delivered her check to him for $2000. Richard cashed the check. Subsequently Mrs. Jahn sent the cancelled check to Mr. Dunkle with a notation attached stating "for to Berry me" and accompanied by this letter to the attorney:

Dear Mr. Dunkle

I think my son-in-law things he is going to 1 over on the kids he borrow $2000.00 from to buring me but said wy don't burn the check when come Bage. I thank you keep this check slip for when you have to Broit. hope you are all fine. Im OK Please keep this mum. until. Im gone. Burn this letter. Thank you.

Richard now claims the transaction involving $2000 was a gift to him at the time.

On January 7, 1972, Minnie C. Sargent, daughter of Mrs. Jahn, petitioned to have a guardian and conservator appointed for Mrs. Jahn and her property. On May 8 of that year the probate court appointed Richard in those capacities. Initially Mr. Dunkle represented Richard as conservator.

On June 15, 1972, Richard filed his inventory. He did not include items for the note of Edward, the loan of $3000, or the transaction involving $2000.

On July 31, 1972, the probate court appointed Edward A. Jahn as co-conservator on the application of six of the nine children.

On January 25, 1973, Richard filed a report of affairs in the conservatorship from May 5, 1972, to September 1, 1972. He did not include the note of Edward A. Jahn, the $3000 loan, or the transaction involving $2000.

The latter three items caused a rupture between Richard and Edward, on one hand, and Mr. Dunkle, on the other. Richard and Edward thought the three items should not be inventoried or accounted for, while Mr. Dunkle thought otherwise. Richard and Edward discharged Mr. Dunkle as attorney.

Mr. Dunkle, aware of the evidence we have related, felt professionally obligated to lay it before the probate court. He applied to the court for instructions, reciting the evidence in substance. The trial court held a hearing on the application. Several of the children testified, bringing out the evidence we have summarized and other matters. A guardian ad litem for Mrs. Jahn cross-examined the witnesses.

On June 17, 1973, Mrs. Jahn died. Richard does not contend he paid her funeral expenses from the item of $2000.

Subsequently the trial court filed its decision holding that the conservators were not required to account for the three items, for lack of proof of ownership of the items in Mrs. Jahn. But the picture presented by the evidence displeased the trial court causing it to comment in its decision "That

the largesse of Mrs. Jahn and her late husband to all their children led to the sorry day in Court requires no comment other than noting it of record."

Mr. Dunkle appealed on behalf of several of the Jahn children limiting the appeal to the two items of $3000 and $2000 involving Richard.

Like the trial court, we find the picture presented by this case objectionable, but we arrive at a different result than that court. We review the case de novo; the trial court heard it in equity. Code 1975, § 633.33.

The evidence shows that Richard stood in a confidential relationship to Mrs. Jahn at the times he claims she forgave his indebtedness of $3000 and gave him $2000. When a person stands in such a relationship, he has the burden of sustaining transfers to him by the other. As we stated in *First National Bank v. Curran,* 206 N.W.2d 317, 322–323 (Iowa):

> When a confidential relationship is shown, the person in whom the trust is reposed is not merely required to go forward with the evidence; he has the burden of persuasion to uphold the transfers. *In re Estate of Lundvall,* 242 Iowa 430, 46 N.W.2d 535. His burden is heavy. He must produce "clear, satisfactory and convincing evidence." *Moorhead v. Miller,* 171 N.W.2d 295 (Iowa). He is required to prove "entire good faith on his part and free, voluntary, and intelligent action on the part of the grantor". *Curtis v. Armagast,* 158 Iowa 507, 519, 138 N.W. 873, 878. The court stated in *Merritt v. Easterly,* 226 Iowa 514, 530, 284 N.W. 397, 405:
>
> "Since that [confidential] relationship existed between the deceased and the appellant, the burden was upon the appellant to rebut the presumption of overreaching on his part, and to affirmatively establish that in his acquisition of property, in the transactions in controversy, he took no advantage of the deceased by reason of their relationship, but that she acted voluntarily with freedom, intelligence and a full knowledge of all of the facts. . . .

> The courts must scrutinize with jealous vigilance transactions between persons sustaining relations of trust and confidence, to the .end that the dominating member shall conduct himself with uberrima fide—the utmost good faith."

Upon our de novo review of the evidence, we hold that Richard has not sustained his burden with respect to the two items.

We see no necessity for retrial. The parties could have presented additional evidence at the hearing had they desired to do so. We therefore return the case to district court with directions to enter an order requiring Richard to account in his final accounting as conservator for the items of $3,000 and $2,000, with interest.

REVERSED AND REMANDED.